905 F.2d 1394
 Mark A. FULLMER and Lyman Moody,
Plaintiffs-Appellees/Counter-Defendants,
Lee Kennard, Plaintiff-Appellee,
v.
WOHLFEILER & BECK, a corporation, and George Beck, an
individual, Defendants-Appellants/Counterclaimants.
 No. 86-1167.
 United States Court of Appeals,
Tenth Circuit.
 June 12, 1990.
 
 Stanley J. Preston of Snow, Christensen & Martineau (Max D. Wheeler of Snow, Christensen & Martineau, Salt Lake City, Utah, with him on the brief), for plaintiffs-appellees/counter-defendants.
 Robert H. Rees of Kipp and Christian, P.C. (Carman E. Kipp of Kipp and Christian, P.C., Salt Lake City, Utah, with him on the brief), for defendants-appellants/counterclaimants.
 Before HOLLOWAY, Chief Judge, and SETH and McWILLIAMS, Circuit Judges.
 HOLLOWAY, Chief Judge.
 
 
 1
 This is a diversity action asserting claims of negligent misrepresentation, negligence and fraud brought by investors in Intermountain Giftmakers, a failed business, against Giftmakers' auditors. After a bench trial, the district judge entered detailed findings, conclusions and a judgment for the investors-plaintiffs, Fullmer, Moody and Kennard, on the negligence and negligent misrepresentation claims for a portion of the damages sought. He found no basis for any claim of fraud by plaintiffs against the defendants. The auditors-defendants, Wohlfeiler & Beck, and defendant George Beck, appeal.
 
 
 2
 * Following is a summary of the trial judge's detailed findings of fact and conclusions of law. The findings and conclusions will be developed further as required in treating the issues raised.
 
 
 3
 During the mid-1970s the business that eventually became Giftmakers began manufacturing and wholesaling gifts. Giftmakers was a cottage industry which manufactured components and sold them to customers who then assembled them in their homes and sold the finished gifts to retailers. After sales dramatically increased during the period from 1976 to 1978, Giftmakers' business declined and it eventually dissolved in 1983. Fullmer, Moody and Kennard, as shareholders and creditors, sued the auditors, Wohlfeiler & Beck, for large losses resulting from transactions between the plaintiffs and Giftmakers.
 
 
 4
 The transactions in question occurred from 1976 through 1983 when Fullmer, Moody and Kennard invested money in Giftmakers and made substantial loans to the company. Fullmer and Moody also became directors of Giftmakers. In making his findings on liability, the trial judge divided these transactions into four time periods: (1) transactions entered into prior to August 8, 1979, when the first unaudited financial statements for December 1978 were furnished by defendants; (2) transactions that took place after the furnishing of the first unaudited information on August 8, 1979, and up until June 6, 1980; (3) the transactions after June 6, 1980, and up until March 1, 1983, when defendants sent audited financial statements of Giftmakers; and (4) transactions after March 1, 1983, when the last audit information defendants furnished related to a time period some 14 months earlier, and at which point the court found that reliance on the old accounting information was unreasonable.
 
 
 5
 The trial judge found no basis for any claim of fraud by the plaintiffs against the defendants. The judge also rejected any claims of knowing or reckless misrepresentation, or even gross negligence; thus no punitive damages were allowed. With respect to the claims based on negligent misrepresentation and negligence, the court did find the defendants liable for losses during the third period suffered on investments, loans and guaranties which the plaintiffs made after defendants issued the audited financial statements. The defendants issued qualified audit opinions on Giftmakers' financial statements for the years ending December 31, 1979, 1980 and 1981. The trial judge found that these financial statements did not conform to generally accepted accounting principles and that the defendants did not perform their audits in accordance with generally accepted auditing standards.
 
 
 6
 The trial judge rejected the defense that the plaintiffs had been guilty of negligence which caused or contributed to the plaintiffs' losses. The letter transmitting his findings and conclusions stated that the judge had not found any of the plaintiffs guilty of contributory or comparative negligence that would reduce their recovery. This was based on his opinion that the plaintiffs' negligence in an accounting malpractice case is only a defense, or the basis for an offset, where the plaintiffs' conduct has contributed to the accountant's failure to perform his work or his failure to furnish accurate accounting information. He said the plaintiffs were imprudent and negligent in the manner in which they handled a number of these transactions (e.g., obtaining no security and on occasion not even obtaining notes, etc.), but that none of that conduct had any relevance to the defendants' responsibility to furnish accurate accounting information.
 
 
 7
 On appeal, the defendants argue that the judgment should be reversed or in any event the case should be remanded for consideration of the defendants' comparative negligence defense. The defendants-appellants do not challenge the trial judge's finding of negligence in making the audits.
 
 II
 The Comparative Negligence Defense
 
 8
 Defendants Wohlfeiler & Beck contend that the trial judge erred in failing to apply comparative fault principles to reduce the plaintiffs' damages by the proportion of fault attributable to them. They point to assertions of the defense in their pleadings, and their proposed findings and conclusions presented to the trial judge.
 
 
 9
 The gist of their argument is that comparative fault is a firmly established principle in Utah common law, and refer to the enactment of Utah's comparative negligence statute, UTAH CODE ANN. Sec. 78-27-37 (repealed effective April 28, 1986). They maintain that the Utah Supreme Court has applied comparative fault principles that now appear in the codification of the Liability Reform Act of 1986, UTAH CODE ANN. Sec. 78-27-37, et seq. (effective April 28, 1986).
 
 
 10
 As noted earlier, the trial judge rejected the comparative negligence defense. In his conclusions of law the judge stated (pp. 37-38):
 
 
 11
 7. Defendants are not entitled to assert a defense of contributory or comparative negligence against plaintiffs. The evidence establishes that plaintiffs passively relied on defendants' audited financial reports and there is no evidence that plaintiffs' negligence contributed to defendants' failure to properly prepare the audited financial reports or in any way prevented them from reporting the true financial condition of IGM in those audited reports.
 
 
 12
 Defendants say the court apparently based its ruling on National Surety Corporation v. Lybrand, 256 A.D. 226, 9 N.Y.S.2d 554 (1st Dept.1939), which stated that the defense of negligence of the employer only applies when the plaintiff's negligence contributed to the accountant's failure to perform his contract. This was a case decided in a contributory negligence context, which is not the doctrine now in Utah. Therefore, defendants say that Devco Premium Finance Co. v. North River Insurance Co., 450 So.2d 1216 (Fla.Ct.App.1984), applies; that the Devco opinion correctly declined to adopt the holding in the National Surety case because it had been decided in a contributory negligence context; and that the plaintiffs should not be allowed to recover for losses which they could have avoided by the exercise of reasonable care, according to the Devco opinion.
 
 
 13
 As the factual premise for their argument on comparative negligence, the defendants argue that had Fullmer and Moody given the business such attention as an ordinarily discreet businessman would have given to his own concerns, they would have discovered the precarious financial situation of Giftmakers and would have avoided or reduced many of their losses. Further they say that Fullmer, Moody and Kennard each handled their transactions with Giftmakers in a negligent and careless manner, obtaining no security for loans, paying far more than book value for shares of stock, etc. Brief of Defendants-Appellants at 21.
 
 
 14
 In the letter transmitting his findings and conclusions to counsel, the judge further explained his holding which rejected the comparative negligence defense:
 
 
 15
 I have not found any of the plaintiffs guilty of contributory or comparative negligence that would reduce their recovery as to any of the claims on which they are entitled to recover. This is so inasmuch as my opinion is that plaintiffs' negligence in an accounting malpractice case is only a defense, or the basis for an offset, where the plaintiffs' conduct has contributed to the accountant's failure to perform his work or to his failure to furnish accurate accounting information. The plaintiffs were imprudent and negligent in the manner in which they handled a number of these transactions (e.g. obtaining no security and on occasion not even obtaining notes, etc.) but none of that conduct had any relevance to defendants' responsibility to furnish accurate accounting information.
 
 
 16
 We are persuaded that the ruling of the trial judge on the comparative negligence theory of the defendants should be upheld. The parties have found no Utah decisions which are dispositive of the precise issue before us, and we have found none. We feel the trial judge has convincingly stated his holding, quoted above, by ruling that the plaintiffs' negligence in an accounting malpractice case is only a defense, or the basis for an offset, where the plaintiffs' conduct has contributed to the accountant's failure to perform his work or to furnish accurate accounting information. This holding is not in conflict with the Utah cases and is supported by reason and other authorities.
 
 
 17
 It is true that in the context of a negligent misrepresentation action, the Utah court has held that the plaintiff has a duty to act reasonably to protect its own interests. Christenson v. Commonwealth Land Title Insurance Co., 666 P.2d 302, 306 (Utah 1983); Mikkelson v. Quail Valley Realty, 641 P.2d 124, 126 (Utah 1982). Thus we agree that in some circumstances, as defined by the trial judge, comparative negligence can be a defense. Moreover, it was stated in Jardine v. Brunswick Corporation, 18 Utah 2d 378, 423 P.2d 659, 662-63 (1967), that:
 
 
 18
 [T]here is recognized a defense somewhat analogous to contributory negligence in other tort actions. The one who complains of being injured by such a false representation cannot heedlessly accept as true whatever is told him, but has the duty of exercising such degree of care to protect his own interests as would be exercised by an ordinary, reasonable and prudent person under the circumstances; and if he fails to do so, is precluded from holding someone else to account for the consequences of his own neglect.
 
 
 19
 Here, however, it was found that each plaintiff "as a result of their reasonable reliance on the negligent misrepresentations contained in defendant's audited financial reports" suffered the losses for which damages were allowed. Findings of Fact and Conclusions of Law at 30. These findings related to the audited reports, which the defendants had undertaken a duty to prepare, distinguish our case from one like Jardine where a heedless acceptance of a false representation was involved.
 
 
 20
 The conclusions of the trial judge are supported by persuasive authority. In Lincoln Grain, Inc. v. Coopers & Lybrand, 216 Neb. 433, 345 N.W.2d 300 (1984), a judgment for the defendant public accountants was reversed and the cause remanded for trial on a claim that an audit had not been conducted in accordance with generally accepted auditing standards. In affording guidance for the retrial, the Nebraska court agreed with the views expressed in National Surety Corporation v. Lybrand, 256 A.D. 226, 9 N.Y.S.2d 554 (1939), and Shapiro v. Glekel, 380 F.Supp. 1053 (S.D.N.Y.1974), and in Hawkins, Professional Negligence Liability of Public Accountants, 12 Vand.L.Rev. 797 (1959), and Menzel, The Defense of Contributory Negligence in Accountants' Malpractice Actions, 12 Seton Hall 292 (1983). The court stated:
 
 
 21
 We agree with the view of the National Surety and Shapiro courts that accountants are not to be rendered immune from the consequences of their own negligence merely because those who employ them may have conducted their own business negligently. Allowing such a defense would render illusory the notion that an accountant is liable for the negligent performance of his duties. We hereby adopt the rule enunciated by the National Surety and Shapiro courts, and articulated by Hawkins and Menzel, that the contributory negligence of the client is a defense only where it has contributed to the accountant's failure to perform the contract and to report the truth.
 
 
 22
 345 N.W.2d at 307.
 
 
 23
 Defendants argue that the court's statements demonstrate that the Lincoln Grain case was decided under contributory negligence principles, and that the harsh rule of the absolute bar of contributory negligence is not the rule now in Utah, Rigtrup v. Strawberry Water Users Association, 563 P.2d 1247, 1249 (Utah 1977), overruled on other grounds, Moore v. Burton Lumber & Hardware Co., 631 P.2d 865 (Utah 1981); hence the Lincoln Grain opinion and others decided in contributory negligence regimes are inapplicable.
 
 
 24
 We disagree with this analysis of the Lincoln Grain case. While it is true that in the portion of the opinion quoted above, and in statements cited by the defendants, the court referred to contributory negligence, in actuality the case was decided in the context of comparative negligence principles. Earlier in the Nebraska court's opinion there is discussion of the trial court's instruction which did refer to contributory negligence. However, the instruction stated:
 
 
 25
 If so, and if such negligence on the part of Lincoln Grain was the proximate or a proximately contributing cause of Lincoln Grain's damage, then the jury should compare the negligence of both Lincoln Grain and Coopers & Lybrand and otherwise proceed in accordance with the comparative negligence instructions. (Emphasis added.)
 
 
 26
 345 N.W.2d at 306.
 
 
 27
 Of course, there is a fundamental difference between the contributory negligence and comparative negligence doctrines, with the latter avoiding harshness of the absolute bar of contributory negligence. However, we are not convinced that the reasoning in the cases decided in contributory negligence contexts is necessarily inapposite here. Allowing either a comparative negligence or contributory negligence defense would tend to "render illusory the notion that an accountant is liable for the negligent performance of his duties," which is a result rejected by Lincoln Grain, 345 N.W.2d at 307. There is force to the reasoning in Lincoln Grain and other authorities with respect to both contributory and comparative negligence regimes. The basic reasoning was stated in National Surety Corporation v. Lybrand, 9 N.Y.S.2d at 563: "[W]e see no reason to hold that the accountant is not liable to his employer in such cases. Negligence of the employer is a defense only when it has contributed to the accountant's failure to perform his contract and to report the truth."
 
 
 28
 The persuasive analysis in Menzel, The Defense of Contributory Negligence in Accountant's Malpractice Actions, 12 Seton Hall 292 (1983), makes no distinction between contributory negligence and comparative negligence regimes. The introduction to the article states that "[t]he most interesting issue presented by accountant's malpractice cases is the availability of the defense of contributory, or, depending upon the jurisdiction, comparative negligence." The analysis then proceeds using the term contributory negligence as including comparative negligence as adopted in New Jersey. Id. at 292 n. 1. The general conclusion of the author is stated as follows, id. at 310:
 
 
 29
 It is submitted that the better reasoned view, and the view supported by the weight of authorities which have considered the question, is that the negligence of a client in managing his business should not generally be a defense in accountant's malpractice actions. When, however, the conduct of the client is unreasonable under the circumstances and interferes with the accountant's ability to perform his duty, that conduct should be a bar, or partial bar (depending on applicability of comparative negligence concepts) to the cause of action. In other words, the better rule is that set forth in National Surety. (Emphasis added.)
 
 
 30
 We have considered Devco Premium Finance Co. v. North River Insurance Co., 450 So.2d 1216 (Dist.Ct.App.Fla.1984), and are not persuaded to adopt its reasoning. The Devco opinion rejected the holding of National Surety Corporation v. Lybrand, on the basis of the distinction between contributory negligence and comparative negligence. The National Surety Corporation principle that the negligence of the employer is a defense only where it contributed to the accountant's failure to perform his duty was rejected on the basis of that distinction. We disagree. In accord with the analysis by Mr. Menzel, we are persuaded that the more fundamental principle is that the accountant should not be absolved of the duty undertaken by him to one reasonably relying on his audit unless the plaintiff's negligence contributed to the auditor's misstatement in his reports.
 
 
 31
 In sum, we are not persuaded that the trial judge erred in his ruling that the comparative negligence defense was inapplicable here. His views have substantial support in authorities we have cited. Moreover, in view of the unsettled state of the law in Utah on the precise issue before us, we treat the views of the resident district judge with some deference, although the legal ruling is ultimately reviewed de novo. Wilson v. Al McCord, Inc., 858 F.2d 1469, 1473 (10th Cir.1988). The Supreme Court has noted that it is "hesitant to overrule decisions by federal courts skilled in the law of particular states unless their conclusions are shown to be unreasonable." Chardon v. Fumero Soto, 462 U.S. 650, 654 n. 5, 103 S.Ct. 2611, 2615 n. 5, 77 L.Ed.2d 74 (1982) (quoting Propper v. Clark, 337 U.S. 472, 486-87, 69 S.Ct. 1333, 1341-42, 93 L.Ed. 1480 (1949)); see also Bishop v. Wood, 426 U.S. 341, 346 n. 10, 96 S.Ct. 2074, 2078 n. 10, 48 L.Ed.2d 684 (1976). For the reasons given, we are satisfied that the trial judge's ruling on the comparative negligence issue was not unreasonable and should be accepted. Propper, 337 U.S. at 489, 69 S.Ct. at 1343.
 
 III
 
 32
 Defendants' Assertion That Clements' Knowledge Should Be
 
 
 33
 Imputed to Plaintiffs Fullmer and Moody, Defeating
 
 Their Right to Recover
 
 34
 Defendants maintain the trial court erred in failing to impute to plaintiffs Fullmer and Moody the knowledge of Clements, an officer of Giftmakers; that having such knowledge, Fuller and Moody could not establish all the elements of their negligent misrepresentation and negligence causes of action; and thus reversal of judgment for them should follow. Brief of Defendants-Appellants at 22-27.
 
 
 35
 The background facts were found by the trial court with respect to the relationships of Fullmer, Moody and Clements. Plaintiff Fullmer became chairman of the board of directors of Giftmakers on or about February 13, 1979, and never resigned and was never removed from that position. Plaintiff Moody became a member of the board of directors of Giftmakers on or about November 23, 1977, and never resigned and was never removed. On March 1, 1976, Clements became executive vice-president and chief financial officer of Giftmakers. Findings of Fact and Conclusions of Law at 2, 4.
 
 
 36
 The defendant's argument runs along this line: the uncontroverted evidence at trial indicates that Clements was an agent of Fullmer and Moody, who were directors of Giftmakers. Fullmer and Moody had a duty under Utah law to give the business the attention an ordinarily discreet businessman would give to his own concern; instead, "they delegated and relied on Clements, a fellow member of the board, vice-president, and chief financial officer, to supervise and direct the operations of the company on their behalf. Under those circumstances Clements was Fullmer and Moody's agent." Brief of Defendants-Appellants at 23. Because Clements was an agent of Fullmer and Moody, his knowledge became their knowledge. With Clements' knowledge imputed to them, Fullmer and Moody were unable as a matter of law to establish reasonable reliance or misstatements in the financial reports. Id. at 24, 26.
 
 
 37
 The difficulty is that these are assertions of the creation by Fullmer and Moody of an agency relationship by Clements without any record support being shown. Clements was an officer of the corporation, but the creation of an individual agency relationship with respect to Fullmer and Moody is another matter. This theory was submitted to the trial judge in proposed findings, but he rejected the theory and instead found as follows:
 
 
 38
 9. Plaintiffs are not bound by the alleged knowledge of Clements regarding either the financial condition of IGM, or the accounting treatment given to certain items in IGM's financial statements by defendants. Defendants represented to Clements that such accounting treatment was proper under generally accepted accounting principles and he reported this information to plaintiffs. Based on these representations, plaintiffs had no reason to believe otherwise and plaintiffs believed that the audited financial reports were accurate.
 
 
 39
 Findings of Fact and Conclusions of Law at 38-39.
 
 
 40
 The defendants argue that the ruling was in error, saying that "the uncontroverted evidence at trial indicates that Clements was Fullmer and Moody's agent." Brief of Defendants-Appellants at 23. This broad assertion about the creation of an agency relationship with respect to Clements is not supported by any reference to the record. Defendants have not shown that the findings and conclusions of the trial judge rejecting their theory were clearly erroneous. Accordingly, we conclude that the defendants have demonstrated no error in the ruling of the district court on the issue.
 
 IV
 
 41
 Defendants' Claim of Error in the Award of Damages With
 
 Respect to Plaintiffs' Investment in the
 
 42
 "Hangouts" Royalty Interest
 
 
 43
 Defendants challenge the award of damages to Fullmer and Moody in connection with their loans to Giftmakers on "Hangouts," a specific product line of goods which Giftmakers anticipated producing. They say that the only reasonable inference to be drawn from the evidence is that these investments by Fullmer and Moody were not loans to Giftmakers but were merely purchases of royalty interests in a separate and specific line of goods; that the agreements (Exhibits 28 and 34) do not evidence loans, but show nothing more than purchases by Fullmer and Moody of a royalty interest in the "Hangouts" line of goods; that the considerations going into a decision to purchase a royalty interest are different from those underlying a loan; that the considerations for the royalty interest purchase center around anticipated success of the product line, while the considerations for making a loan concern the over-all viability of the debtor. Brief of Defendants-Appellants at 28-29.
 
 
 44
 Defendants say that Fullmer and Moody were provided information on the anticipated sales and success of the "Hangouts" line, which was separate and apart from the reports prepared by the accounting firm, and it was the separate information on the line of goods on which Fullmer and Moody relied in entering into these transactions, not the financial reports prepared by the accounting firm. Accordingly, since Fullmer and Moody did not rely on the financial reports prepared by the defendants in entering into the transactions, they should not recover. And if, in fact, Fullmer and Moody did rely on the reports prepared by the defendants, such reliance was unreasonable.
 
 
 45
 The trial judge addressed this issue in his findings and conclusions. It was found that Fullmer made a $25,000 loan to Giftmakers on November 30, 1981, in return for a royalty interest in the "Hangouts" new product line, paying this sum to Giftmakers by means of a $15,000 check dated January 7, 1982, and a $10,000 check about the same date. It was found that Moody loaned Giftmakers $25,000 on June 24, 1981, obtained by a loan from Far West Bank; that on November 30, 1981, Moody converted the loan to a royalty interest in the "Hangouts" line of Giftmakers. The judge found that in entering into each of these financial commitments, a substantial factor on which each of the plaintiffs reasonably relied was the audited financial reports prepared by the defendants. Findings of Fact and Conclusions of Law at 22-24. In his conclusions of law, the trial judge held that plaintiffs were entitled to recover against defendants on their claim of negligent misrepresentation with respect to the "Hangouts" loan of $25,000 by Moody and $25,000 by Fullmer. Id. at 30-31.
 
 
 46
 We are not persuaded by the arguments of the defendants. First, the contention that the agreements do not evidence loans is not convincing because the agreements, although entitled "Assignment of Royalty Interest," do show financing and recite in fact that they are in return for "financing a portion of the costs associated with producing and marketing the line." Plaintiffs' Exhibits 28 and 34. Commitments of repayments related to the amount of the payments made by Moody and Fullmer are made in the agreements, with interest obligations. It is true that in Defendants' Exhibit 12, projections were furnished which provided information regarding the anticipated sales and success of the "Hangouts" line. It is true that plaintiff Moody testified that the agreement by providing twice the amount of the loan in respect of some recovery was "generous" and there was particular interest by him in the potential of getting more than that through the royalty arrangement. Tr. 324-25. Dr. Fullmer conceded that if one got a royalty interest in this line, he might get a good return out of that royalty interest by sales of the line. Tr. at 508. Nevertheless, there was testimony by Dr. Moody that he did rely on the financial reports in making the June 24, 1981, loan and subsequently converting it into an interest in the "Hangouts" line. Tr. 276. Furthermore, Dr. Moody testified that the arrangement did have a connection with the financial condition of the company and he was "relying upon the financial condition of the company to save me if this did not work out." Tr. 322-23. Dr. Fullmer testified that in entering into the loan in connection with the "Hangouts" arrangement, he did rely on the financial condition of Giftmakers as set forth in their reports. Tr. 440.
 
 
 47
 On consideration of the record evidence, we are not persuaded that the findings and conclusions respecting the "Hangouts" transaction were clearly erroneous. We are instead persuaded that the evidence affords ample support for the findings that the plaintiffs are entitled to recover against the defendants on their claim of negligent misrepresentation with respect to the transactions by both Dr. Fullmer and Dr. Moody related to the "Hangouts" matter.
 
 V
 
 48
 Defendants' Claim of Error in the Trial Court's Refusal to
 
 
 49
 Reduce Damages by the Amount of Alleged Tax
 
 Benefits to Plaintiffs
 
 50
 Defendants further contend that the plaintiffs expected to receive tax benefits as a result of their losses from the transactions with Giftmakers. They say the district court erred in failing to reduce the plaintiffs' damages award by the amount of those tax benefits received or expected to be received in connection with their investments. Brief of Defendants-Appellants at 31-33. We disagree.
 
 
 51
 The trial court ruled against the defendants on the issue, stating:
 
 
 52
 The damages to be recovered by plaintiffs shall not be reduced by the amount of tax benefit, if any, which plaintiffs have received or expect to receive as a result of their losses from IGM. Under the tax benefit rule, plaintiffs will be required to report any damages recovered in this action as taxable income, resulting in a recapture of their tax benefits, and any prior tax benefits will thereby be disallowed.
 
 
 53
 Findings of Fact and Conclusions of Law at 39.
 
 
 54
 We are persuaded that the result reached by the district court judge was correct. Cereal Byproducts Co. v. Hall, 16 Ill.App.2d 79, 147 N.E.2d 383, aff'd, 15 Ill.2d 313, 155 N.E.2d 14 (1958) (refusing to reduce damages for accountants' negligence in not discovering embezzlement of plaintiff by amount of tax benefits plaintiff received by virtue of theft) (on appeal to Illinois Supreme Court, tax benefit issue not raised); see also Randall v. Loftsgaarden, 478 U.S. 647, 660, 667, 106 S.Ct. 3143, 3155, 92 L.Ed.2d 525 (1986) (refusing tax benefit offset in securities fraud case); cf. MERTEN'S LAW OF FEDERAL INCOME TAXATION Sec. 7.74, et seq.; Commissioner v. Anders, 414 F.2d 1283, 1287-88 (10th Cir.1969).
 
 VI
 
 55
 The Claim of Error in the Damage Award to Plaintiff Kennard
 
 
 56
 Defendants lastly argue that the trial judge erred in awarding plaintiff Kennard recovery of $20,000 for his investment in Giftmakers' stock in November 1982. They say that an accountant's liability does not extend to such a future purchaser who could not reasonably be foreseen as a third party who could be expected to rely on a financial statement prepared by an accountant for the corporation, citing Milliner v. Elmer Fox and Co., 529 P.2d 806, 808 (Utah 1974).
 
 
 57
 The Utah Supreme Court later referred to the ruling in the Milliner case in Bushnell v. Sillitoe, 550 P.2d 1284, 1286 n. 5 (Utah 1976). The court there stated that the Milliner opinion confines the liability in such circumstances to those who "could reasonably be foreseen as a third party who would be expected to rely on the financial statement prepared by the accountant."
 
 
 58
 We are satisfied that plaintiff Kennard was properly found to be entitled to recover. The trial judge found that:
 
 
 59
 (d) Defendants knew that the audited financial reports would be presented to IGM's board of directors, its shareholders, and potential lenders and investors, for the purpose of obtaining financing and stock investments. Defendants also knew that shareholders would rely on these reports in assuming IGM's corporate debts. Defendants should reasonably have expected that plaintiffs, among others, would rely and act on their audited reports for these purposes.
 
 
 60
 With respect to plaintiff Kennard, the judge covered him in the findings that included Moody, Fullmer and Kennard as having incurred damages "as a result of their reasonable reliance on the negligent misrepresentations contained in defendants' audited financial reports...." He found that Kennard had incurred damages of $20,000. Kennard was included in the conclusions of law that he was entitled to recover on the claim for negligent misrepresentation with respect to his Giftmakers stock purchase for $20,000 on November 19, 1982. Findings of Fact and Conclusions of Law at 30-31.
 
 
 61
 Plaintiff Kennard was properly held within those who could reasonably be foreseen to rely on the audited reports. See Bushnell, 550 P.2d at 1286 n. 5; Restatement (Second) of Torts Sec. 552.
 
 
 62
 AFFIRMED.