# UNITED STATES COURT OF APPEALS
## Tenth Circuit
### Byron White United States Courthouse
### 1823 Stout Street
### Denver, Colorado 80294
### (303) 844-3157

Patrick J. Fisher, Jr.                                           Elisabeth A. Shumaker
Clerk                                                            Chief Deputy Clerk

March 9, 1998

**TO:**   ALL RECIPIENTS OF THE CAPTIONED OPINION

**RE:**   96-4044, *Steiner Corp. v. Johnson & Higgins*
Originally filed on January 13, 1998.
Revised and refiled on March 9, 1998.

The published opinion in this appeal has been revised and refiled.  Specifically, section "III A" of the opinion has been revised and is different from the opinion filed on January 13, 1998.  Also, appended to the revised opinion is an order addressing the petition for rehearing.

Please find a copy attached for your convenience.

Sincerely,

Patrick Fisher
Clerk

By:
Keith Nelson
Deputy Clerk

**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAR 9 1998**

**PATRICK FISHER**
**Clerk**

<u>PUBLISH</u>

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

STEINER CORPORATION, a Nevada
corporation,

     Plaintiff-Counter-Defendant-
     Appellant,

and

CAROL S. MCCORMICK, Administrator
of the Steiner Corporation Retirement
Plan, and STEINER CORPORATION
RETIREMENT PLAN,

     Plaintiffs-Counter-Defendants,

v.

JOHNSON & HIGGINS OF
CALIFORNIA, a California corporation;
DONALD F. REEVES and ROY J.
BERTOLDO,

     Defendants-Counter-Claimants-
     Appellees.

No. 96-4044

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF UTAH**
**(D.C. No. 88-CV-410)**

Peter W. Billings, Jr. (Jay B. Bell, John E. S. Robson and James F. Wood with him on the brief), of Fabian & Clendenin, Salt Lake City, Utah, for Plaintiff-Counter-Defendant-Appellant.

Robert A. Lewis of McCutchen, Doyle, Brown & Enersen, San Francisco, California (William Carpenter of McCutchen, Doyle, Brown & Enersen, San Francisco, California, and David A. Greenwood of Van Cott, Bagley, Cornwell & McCarthy, Salt Lake City, Utah, with him on the brief), for Defendants-Counter-Claimants-Appellees.

---

Before **KELLY, HOLLOWAY** and **BRISCOE,** Circuit Judges.

---

**HOLLOWAY,** Circuit Judge.

---

Plaintiff Steiner Corporation, along with others not parties to this appeal, brought this action against defendants in 1988 for professional malpractice and breach of contract. Defendant Johnson & Higgins (sometimes referred to herein as J & H) is the actuarial firm which handled aspects of plaintiff's employee retirement plan. Defendants Reeves and Bertoldo were the individual members of Johnson & Higgins responsible for the work on plaintiff Steiner's matters.

After a bench trial, judgment was entered in favor of plaintiff on its claim that defendant negligently redrafted a section of plaintiff's plan, but plaintiff's primary claim for professional malpractice was rejected. Both sides appealed. We affirmed in part, reversed in part, vacated in part and remanded. *Steiner Corp. Retirement Plan v. Johnson & Higgins*, 31 F.3d 935 (10th Cir. 1994), *cert. denied,* 115 S. Ct. 732 (1995). In so doing we directed that the merits of defendant Johnson & Higgins' defenses of laches and

contributory negligence, *inter alia*, be considered on remand because the district court's opinion before us then was silent as to these issues and they involved factual determinations that we were unwilling or unable to make. *Id.* at 941.

On remand, in an unpublished Order on Remand of December 28, 1995, the district court again ruled in defendants' favor on plaintiff's primary claim and entered judgment in favor of defendants on their counterclaim for unpaid fees. Plaintiff appeals the rejection of its malpractice claim against defendants, but has not appealed the judgment in favor of defendants on the counterclaim.

**I**

Plaintiff's appeal from the district court's judgment focuses on the court's holding that plaintiff could not recover on its actuarial malpractice claim against the defendants under Utah's comparative negligence statute because plaintiff's negligence was comparatively greater than that of defendants. Order on Remand at 8. The following summary is primarily based on the district court's detailed findings of fact, made following the bench trial which preceded the first appeal. Unpublished Findings of Fact and Conclusions of Law of January 24, 1992. Neither party specifically takes issue with any of these findings.

Plaintiff established an employee retirement plan (the Plan) in 1958. The Plan is subject to ERISA, the Employee Retirement Income Security Act of 1974, Pub. L. 93-406, 29 U.S.C. §§ 1001, *et seq.*, and is a "defined benefit plan" under the Internal

Revenue Code. The feature of the Plan which is the focal point of this litigation is its provision permitting a retiring employee to receive all of his or her benefits in a single, lump sum payment as an alternative to the ordinary monthly payment of benefits. Although the Plan provided that the lump sum benefit was to be calculated so as to make it the actuarial equivalent of the monthly payment option, in fact this was never the case prior to 1986. Instead, the formula developed for calculating the amount of the lump sum benefit resulted in that option being more valuable than the monthly payment option, as is described in more detail in our previous opinion. 31 F.3d at 937. The formula was created by Mr. F. J. Kane, who was plaintiff's chief financial officer until his retirement in 1984. Kane knew that the lump sum payment was more valuable than the monthly payment option.

Beginning in 1977, plaintiff retained defendant Johnson & Higgins as the actuary for the Plan, an arrangement which continued until 1988. One of the services performed by defendants was to prepare an annual actuarial statement for the Plan, as required by ERISA. Each annual statement included a valuation of the Plan's assets and liabilities and a calculation of the permissible range of employer contributions needed to maintain solvency of the Plan. Although historically most retirees had chosen the more valuable lump sum distribution, defendants continued each year to prepare the valuation of the Plan on the assumption that retirees would choose the monthly payments. Consequently,

the Plan valuations substantially understated the value of the Plan's liabilities and the level of contributions needed to maintain solvency.

Over the years there had been discussions between defendants and representatives of plaintiff about the fact that the formula used to compute the lump sum benefit resulted in that being a more valuable option. As market interest rates rose, the difference in value of the two options became greater. Defendants specifically recommended in 1977 and 1978 that plaintiff restructure the formula to employ a fluctuating, market-based interest rate to calculate the lump sum benefit, and thereby eliminate the disparity in the value of the two options. Mr. Kane, acting for plaintiff, did not follow this advice.

Kane retired in 1984 and Kevin Steiner replaced Kane on July 1, 1984, as plaintiff's chief financial officer. Unlike Kane, Mr. Steiner did not know that the lump sum benefit was more valuable than the monthly payment option. Order on Remand at 3, Aplt. App. at 80. Also in 1984 or 1985, plaintiff became aware that the Plan would have to be amended by October 31, 1985, to comply with the Retirement Equity Act and other laws and regulations. The most significant change in the governing law required for the first time that

> a single formula for calculating optional benefits be selected and written
> into the Plan. This was a new requirement in federal pension law -- that the
> factors used to determine 'actuarial equivalence' of optional benefits should
> become fixed and be written into the Plan.

Finding of Fact ¶ 24, Aplt. App. at 64. The new laws and regulations included a deadline of October 31, 1985, for making all conforming amendments to the Plan.

In February 1985, Kevin Steiner met for the first time with representatives of Johnson & Higgins to discuss the Plan and the amendments which would have to be made. Mr. Steiner was told at this meeting that the value of accrued benefits, the amount reported on plaintiff's annual financial statements, was calculated on the assumption that all retiring employees would choose the monthly payment form of distribution. Mr. Steiner asked if it would make a difference if instead the calculation were to be done on the assumption that all retirees would elect the lump sum. He was told that this would have to be calculated. Mr. Steiner requested that this calculation be done, and defendants agreed to do so. More than once after this February meeting, Mr. Steiner followed up on his request, eventually asking for a rough or "ballpark" estimate of liabilities based on the assumption that all employees would elect to take the lump sum. Finding of Fact ¶ 28, Aplt. App. at 66.

Defendants failed to provide plaintiff any information or comparative calculations in response to these requests prior to the critical date of October 31, 1985. *Id.* Instead, defendants prepared amendments to the Plan which sufficed to achieve compliance with the new requirements of the controlling law, but did so by incorporating the old formula for lump sum options into the Plan document. Defendants did so without advising plaintiff, as specifically requested, about the magnitude of the difference in the value of the lump sum distribution versus the monthly payment option. Defendants did not advise plaintiff of the corresponding under funding of the Plan since its inception due to having

set funding levels on the unrealistic assumption that all retirees would elect to receive monthly payments. Defendants did not inform plaintiff that, although there was a difference of opinion on the matter, there was a possibility that the lump sum formula could be changed before being incorporated into the Plan document, with significant resulting savings. *Id*. at 67-68. This court's opinion on the prior appeal herein found that Steiner in fact could have changed "the Layered Formula to make the lump sum equivalent to the annuity, and that J & H breached its duty by failing to provide this information by October 31, 1985." 31 F.3d at 941.

In March 1986, defendants submitted the calculations which Kevin Steiner had requested 13 months before. Defendants' estimate of the value of accrued benefits for 1985, assuming retiring employees would elect the lump sum option, was some $9 million greater than the value of accrued benefits estimated on the assumption that retiring employees would choose to receive monthly payments.[1] After plaintiff received this report from Johnson & Higgins, the Plan was amended by the adoption of a new formula to calculate the lump sum benefit, one which for the first time was calculated to make the

---

[1]The district judge made this finding of fact:

> In early 1986, defendants informed Steiner and provided calculations that the value of accrued benefits for 1985 using the lump sum election assumption would be $14,564,243.00 instead of $5,046,536.00 using the annuity election assumption.

Finding of Fact ¶ 32, Aplt. App. at 68.

lump sum option the actuarial equivalent of the alternative monthly distribution. If the amendment had been made before October 31, 1985, or at least before new regulations went into effect in January 1986, the amendment could have been made applicable to all employees. As the district court found, however,

> due to regulations in effect after October 31, 1985, the 1986 amendment to the plan applied only to the prospective calculation of benefits. Mr. Steiner indicated at trial that if [defendants] had submitted the requested new report prior to October 31, 1985, Steiner would have adopted a Plan that would have retroactively altered the retirement plan such that the lump sum would be rendered the actuarial equivalent of the annuity benefit for all retirees after October 31, 1985.

Order on Remand at 4, Aplt. App. at 81.

The district judge found, following the bench trial which preceded the first appeal, that defendants should have known that plaintiff "might want to make a change in the long time practice of continuing the differential in value of the benefit options." The judge further found that defendants' failure to provide the requested information "amounted to conduct below the standard of care in the industry and constituted negligence on the part of J. & H." Finding of Fact ¶ 31, Aplt. App. at 68. Plaintiff's primary claim in this action, and the only one with which we are concerned in this appeal, is based on such negligence in not providing the requested information to plaintiff which, it is claimed, would have enabled plaintiff to amend its formula for calculating the lump sum benefit prior to the critical date of October 31, 1985, making the amended formula

applicable to many more employees, with substantial resulting savings to plaintiff Steiner.

The district court originally held, however, that plaintiff had not suffered any damages as a result of defendants' negligence. The judge held, before the first appeal to this court, that any change in the formula could not have affected employees whose benefits had already accrued because the old formula had become a part of the Plan by custom and practice. In the first appeal, we reversed this ruling and held that according to the explicit language of 29 U.S.C. § 1054(g)(2), the lump sum is an optional form of benefit, and that Steiner may be said to impermissibly reduce accrued benefits "only if it were to *eliminate* the lump sum." 31 F.3d at 940 (emphasis in original). Thus Steiner could, with timely actuarial information and advice, have arguably made substantial savings by such changes in the formula. We remanded for the district court to consider causation and alleged damages from defendant J & H's negligence, and other defenses to the negligence claim, which the judge had originally found it unnecessary to decide.

On remand, the trial court received additional briefs and heard oral argument, but no further evidence was presented. The judge made findings on the ultimate issues of comparative negligence and causation, based on the underlying facts found after the bench trial. The judge found that plaintiff Steiner was not entitled to damages because its negligence exceeded that of defendants, barring recovery under Utah's comparative negligence statute, Utah Code Ann. § 78-27-38 (1996). In so holding, the judge cited

pre-1985 actions by plaintiff Steiner, which he found to have been negligence that contributed to Steiner's injury. The judge further found that such negligence by Steiner itself was comparatively greater than that of its actuary, defendant J & H, in its contribution to the injury suffered when the Plan was not properly adjusted in 1985, therefore barring recovery under Utah law. Order on Remand at 8, Aplt. App. at 85. The judge rejected defendant J & H's laches defense, finding there was insufficient evidence of Steiner's alleged intentional delay of the litigation so that the laches defense failed. *Id.* at 83.

## II

## A

Plaintiff Steiner argues that the district judge erred in holding that Steiner's own pre-1985 negligence was comparatively greater than that of its actuary, defendant J & H, barring Steiner from recovering for J & H's negligence. Order on Remand at 8, Aplt. App. at 85. The judge cited four points as negligence by plaintiff: plaintiff had been aware at times before 1985 that the lump sum benefit was more valuable than the monthly payment option; plaintiff itself (through Mr. Kane) had created the formula which caused the disparity; defendants had discussed the disparity with representatives of plaintiff and, in 1977 and 1978, had recommended altering the formula to adopt a market-based interest rate factor to calculate the lump sum, advice that was not followed;

and plaintiff had declined to follow defendants' advice to have the 1984 Plan amendment reviewed by independent legal counsel. *Id.*

Plaintiff Steiner maintains that in these findings absolving its actuary, defendant J & H, of liability, the trial judge failed to perceive the proper standard of professional care. The basic principle relied on by Steiner is that a professional holding himself out to serve clients or patients is liable for his negligent performance of duties undertaken and may not be relieved of such liability by his clients' or patients' actions in causing or getting involved in the very conditions which the professional was employed and undertook to treat or remedy. Otherwise the professional would not be held responsible for performing the very duties he assumed. We agree with plaintiff Steiner on this principle.

The principle applies logically to professionals performing accounting services, as in *Fullmer v. Wohlfeiler & Beck*, 905 F.2d 1394 (10th Cir. 1990); to physicians, as in *Sendejar v. Alice Physicians & Surgeon's Hospital*, 555 S.W.2d 879, 885 (Tex. Civ. App. 1977, writ ref'd n.r.e.)[2]; or to attorneys, as in *McLister v. Epstein & Lawrence, P.C.*, 934

---

[2]Other medical malpractice cases with similar holdings include *Jensen v. Archbishop Bergan Mercy Hospital*, 459 N.W.2d 178 (Neb. 1990); *Cheek v. Domingo*, 628 F. Supp. 149, 151-52 (D. V.I. 1986) (patient's negligence in becoming involved in a fight in which he was injured could not be basis for comparative negligence offsetting the fault of the treating physician, but patient's post-treatment negligence in failing to obtain recommended follow-up treatment could be the basis for such a defense); and *Ostrowski v. Azzara*, 545 A.2d 148, 155-56 (N.J. 1988).

P.2d 844, 846 (Colo. App. 1996)[3].  Under this principle *McLister* held that the giving of a

comparative negligence instruction was error, stating persuasively that

> Although comparative negligence is a defense to a claim of legal
> malpractice in Colorado, *see Scognamillo v. Olsen,*  795 P.2d 1357
> (Colo. App.1990), the client's alleged negligence must relate to the injury
> alleged to have been caused by the attorney's negligence and must relate to
> the attorney's representation.  . . .
>
> Here, however, the court based the instruction on plaintiff's failure
> to obtain workers' compensation insurance in the first instance.  Although
> the evidence may have been relevant to the issue of causation, we agree
> with plaintiff that this conduct cannot serve as the basis for a comparative
> negligence instruction.
>
> Defendants knew that plaintiff was uninsured when they agreed to
> represent him.  Plaintiff's failure to obtain workers' compensation
> insurance was therefore neither contemporaneous with, nor causally linked
> to defendants' negligence in handling his case.  Thus, the giving of the
> instruction was error.  *See* 2 R. Mallen & J. Smith, *Legal Malpractice*
> § 20.2 (1996).
>
> To allow the attorneys to rely on the negligence of the client
> preceding the attorney's engagement would be equivalent to allowing a
> physician to defend a claim for malpractice based on the negligence of the
> patient in not having sought treatment sooner.

934 P.2d at 846.

We are persuaded that the trial judge violated the basic principle of the

professional standard of care, which logically applies to actuaries, and was applied in

_____

[3]Other legal malpractice cases with similar holdings include *Theobald v. Byers*, 13
Cal. Rptr. 864 (Dist. Ct. App. 1961);  and *Conklin v. Hannoch Weisman*, 678 A.2d 1060,
1068-69 (N.J. 1996).  *See generally* 2 Ronald Mallen & Jeffrey Smith, *Legal Malpractice*
§ 20.2 at p. 641 (4th ed. 1996) (to serve as a contributory negligence defense, "[t]he client's
negligence must have a causal relationship to the lawyer's error.").

*McLister* to attorneys, and as we recognized in *Fullmer*, which involved accountants.

There, as a Utah ruling, we rejected the notion of absolving the accountant of

responsibility for damage caused to his client on a theory of comparative or contributory

negligence by the client, holding:

> Allowing such a defense would render illusory the notion that an accountant is liable for the negligent performance of his duties. We hereby adopt the rule enunciated by the *National Surety* and *Shapiro* courts, and articulated by Hawkins and Menzel that the contributory negligence of the client is only a defense where it has contributed to the accountant's failure to perform the contract and to report the truth.

905 F.2d at 1398 (quoting *Lincoln Grain, Inc. v. Coopers & Lybrand,* 216 Neb. 433, 345

N.W.2d 300, 307 (1984)).

> We held further in *Fullmer* that

> Allowing either a comparative negligence or contributory negligence defense would tend to "render illusory the notion that an accountant is liable for the negligent performance of his duties," which is a result rejected by *Lincoln Grain*, 345 N.W.2d at 307 . . . . The basic reasoning was stated in *National Surety Corporation v. Lybrand*, 9 N.Y.S.2d at 563: "[W]e see no reason to hold that the accountant is not liable to his employer in such cases. Negligence of the employer is a defense only when it has contributed to the accountant's failure to perform his contract and to report the truth."

905 F.2d at 1398-99. We remain convinced of the soundness of the professional liability

principle followed in *National Surety* which involved the accountant's responsibility to

his clients.

We are convinced that here we should observe the same parameter of professional responsibility for the actuary, J & H, as we did for the similar professional accountant in *Fullmer*:

> [W]e are persuaded that the more fundamental principle is that the accountant should not be absolved of the duty undertaken by him to one reasonably relying on his audit unless the plaintiff's negligence contributed to the auditor's misstatement in his reports.

905 F.2d at 1399 (emphasis added).

**B**

We turn now to defendant J & H's arguments seeking to escape liability under the professional malpractice principle discussed above.

At the outset we note that one argument of defendant J & H has been firmly rejected in the controlling Supreme Court decision in *Salve Regina College v. Russell*, 499 U.S. 225 (1991), which the parties here have not recognized. J & H cites earlier decisions of this court and contends that great deference is owed to the view of the federal district judge here who is familiar with Utah law. Brief of Appellees at 18-19. That notion of deference to the local expertise of the district judge is clearly wrong since *Salve Regina College* was decided, and our consideration of the Utah law questions before us must be *de novo*. *Salve Regina College* firmly instructed us that "the obligation of responsible appellate review and the principles of a cooperative judicial federalism underlying *Erie* require that courts of appeals review the state-law determinations of district courts *de novo*." *Id.* at 239.

- 14 -

One of defendants' primary arguments against application of the principle of *National Surety* and its progeny, including *Fullmer*, is that these cases have been rejected by a number of courts. Defendants cite, *inter alia*, *Halla Nursery v. Baumann-Furrie & Co.*, 454 N.W.2d 905 (Minn. 1990); *Scioto Memorial Hospital Ass'n v. Price Waterhouse*, 659 N.E.2d 1268 (Ohio 1996); and *Capital Mortgage Corp. v. Coopers & Lybrand*, 369 N.W.2d 922 (Mich. App. 1985). We find these cases unpersuasive. For the most part, their analysis is essentially premised on noting that *National Surety* was decided under, and sought to avoid, the harsh rule of contributory negligence, concluding that under modern comparative negligence statutes, the holding of *National Surety* is unnecessary to permit a plaintiff to recover when its negligence has been relatively slight. We rejected this rationale in *Fullmer*, 905 F.2d at 1398-99. Our analysis above is not based on the differences between comparative and contributory negligence but focuses on the specific injury alleged by the plaintiff and the specific duties undertaken by the defendants. We are convinced that under either a comparative or contributory negligence regime, the acts of the client in getting into the circumstances, which he employs the professional to remedy, may not be asserted to avoid liability for the professional's own subsequent negligence. Therefore, the cases rejecting *National Surety* are unpersuasive.

J & H argues further that the principle applied to accountants in *Fullmer, National Surety, Lincoln Grain,* and other cases, should not apply to actuaries. The argument is presented without any convincing rationale or supporting authorities defending the notion

that actuaries should not be subject to the same principle. We are not persuaded by J & H's contention. It has been noted that "[t]he general law of malpractice has been applied to actuaries in a manner similar to that of other professions." William D. Hager and Paul Noel-Chretien, *The Emerging Law of Actuarial Malpractice*, 31 Drake Law Review 831, 842 (1982). The actuary holds himself out to the public as a specialized expert, and he undertakes employment to perform his professional services in the same manner as the other professionals -- lawyers, physicians and accountants, for example. We have already recognized the principle of liability and the limitation on the contributory or comparative negligence defense for sound reasons expressed in *Fullmer*, which is now applied by us as part of the rubric of Utah law. Defendant J & H presents no persuasive authority that Utah is prepared to go down another road, limiting the relief that persons employing actuaries are entitled to under the professional malpractice rules.

Our decision in *F.D.I.C. v. Ferguson*, 982 F.2d 404 (10th Cir. 1991), is not to the contrary. In that case, the client's negligence consisted of failing to perform tasks it had specifically undertaken to perform itself, in connection with the transactions on which the defendant attorney undertook to perform other discrete tasks, such as drafting documents. 982 F.2d at 407. *Ferguson* held only that comparative negligence may be a defense in legal malpractice cases and was a proper defense in the circumstances presented there; the court had no occasion to examine what limits might apply to the defense in other circumstances. In connection with the comparative negligence defense, we held in

*Ferguson* that in "asserting this defense, *the attorney has the burden to prove that his client was negligent in failing to act or disclose information to the attorney*." *Id.* at 407 (emphasis added). We see no support for J & H's position in *Ferguson*, which actually lends support to Steiner's position.

Nor is the Utah case of *Western Fiberglass, Inc. v. Kirton, McConkie and Bushnell*, 789 P.2d 34 (Utah Ct. App. 1990), contrary to this analysis. There the client did not keep the attorneys apprised of the negotiations for the subject transaction or of the closing, and ignored the lawyers' advice to have counsel present at the closing of the transaction. Instead, the client "proceeded to finalize the deal on its own and relied on [the other party's] counsel to complete the paperwork. As a result, [the client's] financing statements were not filed and its security interest . . . was not perfected." 789 P.2d at 36. Thus, the actions of the client which formed the basis for the comparative negligence defense were not the very subject for which the client had sought legal representation, and the client effectively precluded the attorneys from undertaking the tasks which could have prevented the loss, much like the client in *Ferguson*. *Western Fiberglass* is not inconsistent with our analysis of the professional's responsibility.

An analogy to the facts of the instant case may be helpful. Suppose that plaintiff had consulted attorneys regarding the legal requirements for its employee retirement plan under ERISA and the Internal Revenue Code. Suppose further that the plaintiff had negligently set up the plan originally without following legal advice. We think it beyond

- 17 -

argument that if the attorneys undertook to bring the plan into compliance with the law, but failed to do so due to failure to exercise the level of professional care of an ordinarily prudent attorney practicing in this area of the law, the client's prior negligence would not be a shield against the attorney's liability, although it would be relevant to determine the nature and extent of the injury, and the damages available. Because of the way that the client's injury is defined in our hypothetical, the client's prior negligence could not have caused the injury.[4]

We believe that the same principles must apply to the actuary defendants in the circumstances presented here. We hold that plaintiff Steiner's negligence, found by the trial judge, in setting up the Plan and in not following previous advice to restructure the formula for computing the lump sum, may not be asserted to shield the defendant actuary from its liability for subsequent negligence in performing its professional duties. The district judge specifically found that defendants should have known that plaintiff might want to restructure the formula in 1985. The judge also found that Kevin Steiner at a February 1985 meeting with representatives of J & H requested an analysis from the defendants as to the magnitude of the difference of the cumulative lump sum benefits available to participants in the Plan under the formula the plaintiff had been using as compared to the revised formula that defendants had previously recommended. The

---

[4]In *Harline v. Barker*, 912 P.2d 433, 439-42 (Utah 1996), a legal malpractice action, summary judgment for the defendant attorney was proper because under the facts, the attorney's conduct could not have caused the injury.

judge further found that Mr. Steiner requested defendants to make those calculations and the J & H representatives agreed to do so. Finding of Fact ¶ 27, Aplt. App. at 66. Steiner followed up more than once after the February 1985 meeting, asking for a "ballpark estimate" of liabilities based on the assumption that all the employees would elect a lump sum benefit. Defendants failed to provide the information before October 31, 1985. *Id.* These failures were specifically found to be conduct below the standard of care in the industry and constituted negligence by J & H. *Id.* at 68.[5]

In these circumstances, the injury was the loss of the opportunity to change the formula, and we hold that the plaintiff's prior conduct is not a defense for the defendants' failure to perform the professional tasks it undertook. The only negligence on plaintiff's part found by the trial judge which was temporally concurrent with defendants' negligence was the failure to consult an independent attorney. However, defendants have not suggested how that negligence could have contributed to plaintiff's injury, which was caused by defendants' failure to provide the *actuarial* information necessary for plaintiff to evaluate the true exposure of the Plan and the adequacy of its funding.

---

[5]Although the district court found that plaintiff, through officers such as Kane, had always known that the lump sum benefit was more valuable to a retiring employee than the monthly installment payout, the judge did not find, and nothing in his findings suggests, either that plaintiff knew the cumulative magnitude of the difference for the Plan as a whole or that plaintiff had the ability to estimate the cumulative effect by actuarial methods. In any event, the material point is that, according to the district judge's findings, defendants specifically agreed to make the calculations but failed to do so within a reasonable time.

In sum, we hold that the trial judge erred in barring recovery by Steiner for the negligent failure of J & H to perform the professional duties it agreed to undertake for Steiner. Order on Remand at 8, Aplt. App. at 85. The basis for the comparative negligence finding against Steiner was wrongly grounded on Steiner's prior acts that had placed it in the difficulty which J & H specifically undertook to analyze and advise upon.

### III

### A

We now proceed to consider alternative grounds for affirmance urged by defendants. First, defendants assert that plaintiff has suffered no injury. Defendants contend that this is so because when plaintiff amended the Plan in 1986 by revising the formula for calculating the lump sum option, after defendants had belatedly responded to Kevin Steiner's request for information, plaintiff could have made the amended formula fully retroactive, as the panel in the previous appeal held could have been done had the amendment been made prior to October 31, 1985. Plaintiff contends, *inter alia,* that this argument is contrary to the defendants' stipulations in the district court.[6] We do not think that defendants can be said to be estopped from raising this argument, nonetheless, because the argument is based on this court's decision in the previous appeal. We do not agree with defendants' interpretation of that decision, however.

---

[6]In the pretrial order the parties agreed that after October 31, 1985, the formula could not have been changed to have any retroactive effect. Pretrial Order, ¶ M, Aplt. App. at 46.

The gist of defendants' argument is that the previous panel's holding meant that plaintiff could have revised the formula in any way it wished "both before and after" the formula was incorporated into the Plan by the amendments made on October 31, 1985. We disagree with this reading of the previous panel's opinion. We have very carefully studied that opinion and have particularly noted the reference to October 31, 1985, as the "critical" time, 31 F.3d at 940, and numerous similar references throughout the opinion. We conclude that the previous opinion cannot be read as defendants advocate. We conclude, instead, that the holding in the first appeal, which is now the law of the case, was that the lump sum formula could have been revised to have retroactive effect if, but only if, that revision had been effected by October 31, 1985.

Accordingly, we reject defendants' argument that plaintiff has suffered no injury.

**B**

Defendants advance two arguments addressed to causation. First, defendants contend that the district court's finding that plaintiff's negligence was the predominant cause of the injury is an implied finding that defendants' conduct did not cause the injury, and that this finding cannot be overturned unless clearly erroneous. The district court found "that J&H's negligence was at least a partial cause of Steiner's failure to change the actuarial formula in the Plan." Aplt. App. at 82. However, the judge further found that "Steiner's own negligence was the dominant cause." *Id.*

- 21 -

On this record and our legal analysis, we hold that the district court's finding that plaintiff's own negligence was the "predominant cause" of its injury must be set aside as clearly erroneous. This was based on an erroneous view of the law, erroneously permitting Steiner's pre-1985 acts to serve as grounds of comparative negligence. As we have discussed, the negligent acts identified by the district judge were improperly determined to be the basis for the comparative negligence defense because those acts did not "relate to the injury alleged to have been caused by the [professional's] negligence. . . ." *McLister*, 934 P.2d at 846.

Defendants also assert that plaintiff failed to prove that defendants' negligence caused the injury. This argument is basically an attack on the sufficiency of the evidence. Defendants do not specifically take issue with any of the district court's findings, but instead urge, in essence, that plaintiff never proved that it would have acted to avoid the injury, had defendants performed their undertaking to provide the requested actuarial information and advice in a timely fashion. There was at least a substantial factual showing by Steiner disputing defendants' position on this point. Our prior opinion noted that Mr. Steiner testified at trial that if J & H had submitted the requested calculations before October 31, 1985, then Steiner would have adopted a new formula that would have retroactively affected retirees' benefits such that the lump sum would have been equal to the annuity benefit for anyone retiring after October 31. 31 F.3d at 938.

We conclude that the prudent course is to leave this issue of causation of injury for the district judge to address in the first instance on remand, along with his determination of damages.

**C**

Defendants contend that plaintiff's claim should be barred by laches. They claim that plaintiff deliberately delayed filing suit until after Mr. Kane had died, allegedly because plaintiff knew that Kane's testimony concerning his knowledge about the value of the lump sum option would have been damaging to plaintiff's case. The defense fails as a matter of law. Under Utah precedent, limitations but not laches, govern the timeliness of an action at law like this. *DOIT, Inc. v. Touche, Ross & Co.*, 926 P.2d 835, 845 (Utah 1996) (citing *United States v. Mack*, 295 U.S. 480, 489 (1935)). *DOIT* rejected a laches notion under circumstances involving the death of one witness and dispersal of others -- circumstances like those relied on by J & H here.

**D**

Finally, defendants argue that the judgment should be affirmed because contributory negligence, not comparative negligence, should control. Under the traditional common law doctrine of contributory negligence, of course, any fault on the part of the plaintiff which led to the injury would bar recovery, even if defendants' fault were much greater.

Defendants base their argument on the wording of the comparative negligence statute which was in effect in Utah from its enactment in 1973 until 1986, after the events on which plaintiff's claim is based. That statute provided, in pertinent part:

> Contributory negligence shall not bar recovery in an action by any person or his legal representative to recover damages for negligence or gross negligence *resulting in death or injury to person or property*, if such negligence was not as great as the negligence or gross negligence of the person against whom recovery is sought, but any damages allowed shall be diminished in the proportion to the amount of negligence attributable to the person recovering.

Utah Code Ann. § 78-27-38 (repealed 1986) (emphasis added). From the emphasized language, defendants argue that the statute does not apply to this action, in which damages are sought for economic injury only.

Defendants have cited no Utah case construing the particular language on which they rely, and plaintiff made no substantive response to this argument in its reply brief, only remarking that the argument "merits no response." Defendants' suggested construction of the statutory language appears plausible, but we conclude that we need not determine the scope of this repealed statute because under our analysis it is immaterial whether comparative or contributory negligence principles apply. As we have explained, none of the instances of negligence by plaintiff which were identified by the district judge could have contributed to the injury for which plaintiff seeks to recover. Accordingly, even if we were to apply contributory negligence, rather than comparative negligence, our result would be the same.

## Conclusion

Accordingly, we **REVERSE** the district court's judgment and findings rejecting the plaintiff Steiner's malpractice claim against defendants and **REMAND** for a determination, consistent with this opinion, of causation of injury to plaintiff and the damages, if any, sustained by plaintiff Steiner on that claim, and for entry of judgment in accordance with those determinations. The judgment in favor of defendants on their counterclaim for fees was not appealed and is not disturbed.

# UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

---

STEINER CORPORATION, a Nevada
corporation,

      Plaintiff-Counter-Defendant-
      Appellant,

and

CAROL S. MCCORMICK, Administrator
of the Steiner Corporation Retirement
Plan, and STEINER CORPORATION
RETIREMENT PLAN,

      Plaintiffs-Counter-Defendants,

v.

JOHNSON & HIGGINS OF
CALIFORNIA, a California corporation;
DONALD F. REEVES and ROY J.
BERTOLDO,

      Defendants-Counter-Claimants-
      Appellees.

No. 96-4044

---

## ORDER ON PETITION FOR REHEARING

Filed March 9, 1998

---

Before **KELLY, HOLLOWAY** and **BRISCOE,** Circuit Judges.

---

On consideration of defendants-appellees' timely petition for rehearing, the court has determined that the opinion filed herein on January 13, 1998, was in error in one respect. In their brief, defendants argued as an alternative basis for affirmance that plaintiff/appellant Steiner had suffered no injury. *(See part IIIA, supra.)* In part IIIA of the opinion as filed on January 13, 1998, we stated that appellees had failed to show that they had raised this issue in the district court. This was wrong. Appellees had cited in their brief to the portion of the record showing that the issue had been raised below. Accordingly, we grant the petition for rehearing in part, and we have revised part IIIA. We have removed the erroneous statement that the issue had not been shown to have been raised below and instead have addressed the issue on its merits.

In all other respects the petition for rehearing is denied. The clerk is directed to append this order to the revised opinion filed today and to cause it to be published along with that opinion.

ENTERED FOR THE COURT

Patrick Fisher
  Clerk


By:

    Keith Nelson
    Deputy Clerk

- 2 -