2006 UT App 50

**Richard G. FORDHAM, Plaintiff and Appellant,**

v.

**Ryan OLDROYD, Defendant and Appellee.**

No. 20050325.

Court of Appeals of Utah.

Feb. 16, 2006.

---

Peter C. Collins, Peter C. Collins LLC, Salt Lake City, for Appellant.

David W. Lund, Petersen & Hansen, Salt Lake City, for Appellee.

Before Judges BILLINGS, DAVIS, and McHUGH.

## OPINION

McHUGH, Judge:

¶ 1 Richard G. Fordham appeals the trial court's grant of Ryan Oldroyd's motion for summary judgment. We affirm.

## BACKGROUND

¶ 2 "When reviewing a district court's grant of summary judgment, we view the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party, here, the plaintiff. We recite the facts of this case accordingly." *Wayment v. Clear Channel Broad., Inc.,* 2005 UT 25, ¶ 3, 116 P.3d 271 (quotations and citation omitted).

¶ 3 On December 28, 2003, Oldroyd was involved in a single-car accident on a freeway off-ramp in Salt Lake City, Utah. The accident was the result of Oldroyd's alleged negligent operation of his vehicle when he encountered snowy and/or icy road conditions on the freeway.

¶ 4 Several Utah Highway Patrol troopers, including Fordham, responded to Oldroyd's accident. When Fordham arrived at the scene, he positioned and stopped his vehicle for purposes of traffic control and highway safety. Fordham then walked to the rear of his vehicle to retrieve flares, which he intended to use to warn approaching drivers of the accident. While Fordham was retrieving the flares from the trunk of his vehicle, an approaching driver lost control of her automobile, allegedly in a negligent manner, when she encountered snowy and/or icy road conditions on the freeway, and struck Fordham. As a result, Fordham sustained substantial bodily injuries.

¶ 5 In May 2004, Fordham initiated this action against Oldroyd, asserting that Oldroyd's alleged negligence was the proximate cause of his injuries and seeking to recover damages.[1] After limited discovery, Oldroyd filed a motion for summary judgment, arguing that the "fireman's rule"[2] precludes

---

**1.** Prior to filing this action against Oldroyd, Fordham settled with the driver of the vehicle that struck him for her insurance policy limits of $50,000. In addition, Fordham was eligible for, and has received, workers' compensation benefits.

**2.** Although we prefer to refer to this doctrine as the "professional-rescuer doctrine," other juris-

dictions have used numerous terms to describe it, including the "fireman's rule," the "firefighter's rule," and the "public safety officer's rule." Accordingly, in this opinion, we may refer to the doctrine by any of the aforementioned terms, particularly when discussing the approaches taken by other jurisdictions.

Fordham's negligence claim against Oldroyd. After oral argument, the trial court granted Oldroyd's motion. Fordham appeals.

## ISSUE AND STANDARD OF REVIEW

¶ 6 Fordham asserts that the trial court erred by granting Oldroyd's motion for summary judgment based on its conclusion that the professional-rescuer doctrine precludes Fordham's negligence claim against Oldroyd. Summary judgment is appropriate only when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Utah R. Civ. P. 56(c). "Because summary judgment presents only questions of law, we give no deference to the district court's legal decisions and review them for correctness." *Fericks v. Lucy Ann Soffe Trust*, 2004 UT 85, ¶ 10, 100 P.3d 1200.

## ANALYSIS

¶ 7 In challenging the trial court's grant of Oldroyd's motion for summary judgment, Fordham does not contend that there is a "genuine issue as to any material fact." Utah R. Civ. P. 56(c). Rather, Fordham argues that the trial court erred by ruling that Oldroyd was "entitled to a judgment as a matter of law," *id.,* based upon its conclusion that the professional-rescuer doctrine bars Fordham's negligence claim against Oldroyd.

### I.  The Professional–Rescuer Doctrine

■  ¶ 8 This case presents the first opportunity for any Utah appellate court to consider whether, under Utah law, the professional-rescuer doctrine operates to bar a police officer's claim for injuries against a driver, whose alleged negligence caused the officer to be at the scene of an accident, but where the officer's injuries were inflicted by the alleged negligence of a third party. This case presents a difficult issue with cogent arguments supporting both the rejection and the adoption of the rule in this state. After carefully considering this issue, we agree with the trial court that, as matter of public policy and as limited to the facts of this case, Utah should join the majority of states that have adopted the professional-rescuer doctrine.

■  ¶ 9 Under the professional-rescuer doctrine, "a professional rescuer ordinarily cannot recover damages for injuries sustained, while responding to an emergency, from the person who negligently created the crisis." 25 Vincent Robert Johnson, *Personal Injury, Rescuers and the Duty to Act* § 1.07[1] (Louis R. Frumer & Melvin I. Friedman eds., 2004) (footnotes omitted); *see also* 57B Am.Jur.2d *Negligence* § 782 (2004).

¶ 10 For over a century, this rule has been adopted by the vast majority of jurisdictions that have considered it. The Alaska Supreme Court recently noted: "Nearly all of the courts that have considered whether or not to adopt the [f]irefighter's [r]ule have in fact adopted it." *Moody v. Delta W., Inc.*, 38 P.3d 1139, 1140–41 (Alaska 2002) (stating that at the time the decision was issued, only one state had rejected the rule, while the overwhelming majority of states that had considered the rule had adopted it, but also noting that the rule had been abolished or limited by statute in several states). "The broad, albeit not unanimous, endorsement by the courts of the fireman's [rule] suggests that the rule is sound." Johnson, *supra,* § 1.07[2] (footnote omitted); *see also* 8 Am. Jur.2d *Automobiles & Highway Traffic* § 691 (1997) (noting that the fireman's rule is "widely recognized"). Although it "has been criticized by some authors and judges, it is undeniably true ... that almost all jurisdictions confronting this issue have adopted some form of the fireman's rule." *Pottebaum v. Hinds*, 347 N.W.2d 642, 643–44 (Iowa 1984) (citations omitted).

¶ 11 Notwithstanding its broad acceptance by courts that have considered it, the professional-rescuer doctrine has been rejected by some jurisdictions. *See, e.g., Christensen v. Murphy*, 296 Or. 610, 678 P.2d 1210, 1218 (1984) (abolishing doctrine on grounds that supporting policy arguments were flawed and Oregon had abolished assumption of risk by passing comparative negligence statute); *Minnich v. Med–Waste, Inc.*, 349 S.C. 567, 564 S.E.2d 98, 103 (2002) (declining to adopt doctrine because the court was "not persuaded by any of the various rationales advanced

by those courts that recognize the firefighter's rule"). In addition, its application has been limited by other courts. *See, e.g., Levandoski v. Cone,* 267 Conn. 651, 841 A.2d 208, 216 (2004) (refusing to extend doctrine beyond premises liability); *Court v. Grzelinski,* 72 Ill.2d 141, 19 Ill.Dec. 617, 379 N.E.2d 281, 285 (1978) (same); *Lave v. Neumann,* 211 Neb. 97, 317 N.W.2d 779, 782 (1982) (refusing to extend doctrine to police officer on public property).

¶ 12 Fordham argues that the rule unfairly discriminates against police officers and firefighters, while other public employees are free to sue any persons that might have contributed to an injury inflicted upon those employees during the performance of their duties. The South Carolina Supreme Court adopted similar reasoning in rejecting the professional-rescuer doctrine in *Minnich:*

> In our view, the tort law of this state adequately addresses negligence claims brought against non-employer tortfeasors arising out of injuries incurred by firefighters and police officers during the discharge of their duties. We are not persuaded by any of the various rationales advanced by those courts that recognize the firefighter's rule. The more sound public policy—and the one we adopt—is to decline to promulgate a rule singling out police officers and firefighters for discriminatory treatment.

564 S.E.2d at 103.

¶ 13 Although it is a close question and Fordham raises valid considerations, we are persuaded that public policy weighs in favor of adopting the professional-rescuer doctrine in Utah. Furthermore, we believe that application of the rule is consistent with the existing tort law of this state.

## II. Rationale for the Professional–Rescuer Doctrine

¶ 14 The historic underpinnings of the doctrine can be found in decisions addressing traditional concepts of premises liability. "Since a policeman or fireman was privileged to enter land pursuant to his public duties and could come on property any place or time, courts classified them as bare licensees and held the only duty owed these public servants was to not wantonly or willfully injure them." *Pottebaum,* 347 N.W.2d at 644; *see also Waggoner v. Troutman Oil Co.,* 320 Ark. 56, 894 S.W.2d 913, 915 (1995) (adopting doctrine and recognizing licensee origin); *Walters v. Sloan,* 20 Cal.3d 199, 142 Cal.Rptr. 152, 571 P.2d 609, 611 (1977) (reaffirming doctrine and recognizing licensee origin); *Levandoski,* 841 A.2d at 216 (refusing to extend doctrine beyond its historical use in premises liability cases); *Minnich,* 564 S.E.2d at 100 (rejecting doctrine and citing *Gibson v. Leonard,* 143 Ill. 182, 32 N.E. 182 (1892), as the first case to hold that a firefighter entering private property in performance of his job duties is a licensee). Although "[s]ome jurisdictions still rely on this rationale to limit liability to public safety officials," *Pottebaum,* 347 N.W.2d at 644 (citing cases using this rationale), modern decisions have based application of the doctrine on a series of justifications that are not dependent on the professional rescuer's status as a licensee.

¶ 15 One reason offered for the doctrine is the principle of assumption of risk. Courts relying on this rationale "bar recovery for damages caused to policemen or firefighters from those risks that are inherent in their jobs." *Id.* at 645 (citing cases relying upon assumption of risk); *see also Neighbarger v. Irwin Indus., Inc.,* 8 Cal.4th 532, 34 Cal. Rptr.2d 630, 882 P.2d 347, 352 (1994) (stating that doctrine is "an example of the proper application of the [principle] of assumption of risk"); *Steelman v. Lind,* 97 Nev. 425, 634 P.2d 666, 667 (1981) (holding that a highway patrol officer "cannot base a tort claim upon damage caused by the very risk that he is paid to encounter and with which he is trained to cope").

¶ 16 In *Levandoski,* the Connecticut Supreme Court refused to extend the doctrine beyond premises liability cases, in part, on the grounds that assumption of risk had been eliminated by the Connecticut Legislature's adoption of comparative negligence. *See* 841 A.2d at 214–15; *see also Christensen v. Murphy,* 296 Or. 610, 678 P.2d 1210, 1216–17 (1984) (holding that doctrine was not sustainable after abolishment of assumption of risk as a defense by Oregon Legislature).

As in Oregon and Connecticut, assumption of risk "is no longer recognized in Utah as a total bar to recovery." *Hale v. Beckstead,* 2005 UT 24,¶ 21, 116 P.3d 263; *see* Utah Code Ann. § 78–27–38 (2002). Thus, adoption of the professional-rescuer doctrine in Utah cannot be supported by a rationale based upon a theory of assumption of risk.

¶ 17 Assumption of risk, however, is not the only justification courts have cited as support for the professional-rescuer doctrine. Some jurisdictions have relied in large part on public policy considerations. *See, e.g., Waggoner,* 894 S.W.2d at 915 (adopting doctrine); *Walters,* 142 Cal.Rptr. 152, 571 P.2d at 612 (reaffirming doctrine and finding it was supported by "public policy" and "fundamental concepts of justice"); *Thomas v. Pang,* 72 Haw. 191, 811 P.2d 821, 825 (1991) ("[I]t offends public policy to say that a citizen invites private liability merely because he happens to create a need for those public services." (alteration in original) (quotations and citation omitted)); *Pottebaum,* 347 N.W.2d at 645 (citing cases relying on public policy).

¶ 18 In *Moody v. Delta Western, Inc.,* 38 P.3d 1139 (Alaska 2002), the Alaska Supreme Court adopted the professional-rescuer doctrine, stating:

> "There is at work here a public policy component that strongly opposes the notion that an act of ordinary negligence would expose the actor to liability for injuries sustained in the course of a public servant's performance of necessary, albeit hazardous, public duties. In absence of a legislative expression of contrary policy, a citizen should not have to run the risk of a civil judgment against him for negligent acts that occasion the presence of a firefighter at the scene of a carelessly set fire or of a police officer at a disturbance or unlawful incident resulting from negligent conduct."

*Id.* at 1141 (quoting *Berko v. Freda,* 93 N.J. 81, 459 A.2d 663, 667 (1983)). We are persuaded that the doctrine, as applied to the facts before us, is consistent with public policy and not inconsistent with any legislative pronouncement to the contrary, despite Utah's adoption of comparative fault. *See* Utah Code Ann. § 78–27–38.

### III. The Element of Duty

¶ 19 To recover for negligence, Fordham must establish that: (1) Oldroyd owed Fordham a duty of care, (2) Oldroyd breached that duty, (3) Oldroyd's breach of the duty was the proximate cause of Fordham's injuries, and (4) Fordham actually suffered injuries or damage. *See Webb v. University of Utah,* 2005 UT 80,¶ 9, 125 P.3d 906. Rather than introducing a new concept into tort law, the professional-rescuer doctrine recognizes a failure of an essential element of a claim for negligence. The rule bars the rescuer's recovery "for the very valid public policy reason that the party or parties who negligently started the fire had no legal duty to protect the firefighter from the very danger that the firefighter was employed to confront." *Waggoner,* 894 S.W.2d at 915 (adopting rule).

¶ 20 In one of the earliest cases to adopt the professional-rescuer doctrine, Justice Weintraub of the New Jersey Supreme Court explained the absence of the duty element of negligence, stating:

> In terms of duty, it may be said there is none owed the fireman to exercise care so as not to require the special services for which he is trained and paid. Probably most fires are attributable to negligence, and in the final analysis the policy decision is that it would be too burdensome to charge all who carelessly cause or fail to prevent fires with the injuries suffered by the expert retained with public funds to deal with those inevitable, although negligently created, occurrences. Hence, for that risk, the fireman should receive appropriate compensation from the public he serves, both in pay which reflects the hazard and in workmen's compensation benefits for the consequences of the inherent risks of the calling.

*Krauth v. Geller,* 31 N.J. 270, 157 A.2d 129, 131 (1960); *see also Kelly v. Ely,* 336 N.J.Super. 354, 764 A.2d 1031, 1034–35 (Ct.App.Div. 2001) (reaffirming *Krauth* after statutory limitation of the rule and stating that "[i]n our view, the statute [limiting the rule] was intended to ... afford protection to a fire-

fighter injured as a result of negligence unrelated to and independent of, the onset of the fire"). We agree with New Jersey's application of the rule to bar claims against the party whose alleged negligence caused the need for the services of the rescuer, but was not the direct cause of the rescuer's injury.

¶ 21 Furthermore, narrowly defining the scope of the duty owed is consistent with the approach adopted by the Utah Supreme Court regarding an analogous issue under the comparative fault statute. In *Hale v. Beckstead*, 2005 UT 24, 116 P.3d 263, the Utah Supreme Court considered whether the "open and obvious" defense to a tort action brought against a landowner had survived Utah's adoption of comparative fault. *See id.* at ¶¶ 7–31. The plaintiff in *Beckstead* was injured when he fell from a balcony while painting a home being built for the defendant. *See id.* at ¶ 3. Because the home was still under construction, the railing on the balcony had not yet been installed. *See id.* The trial court granted summary judgment in favor of the defendant on the grounds that the danger was open and obvious, completely barring the plaintiff's recovery. *See id.* at ¶ 4. This court affirmed, and Hale appealed to the Utah Supreme Court, *see id.* at ¶¶ 5–6, on the ground that the application of the open and obvious doctrine "contravened comparative fault principles," *id.* at ¶ 12.

¶ 22 The Utah Supreme Court agreed that the Utah Legislature "has necessarily disavowed any tort theory of recovery inconsistent with comparative fault apportionment principles," including the doctrine of assumption of risk. *Id.* at ¶ 21. Nevertheless, the court determined that the Restatement (Second) of Torts version of the open and obvious doctrine was still relevant to the issue of the scope of the duty owed. *See id.* at ¶ 23 (stating that the open and obvious rule "is a duty-defining rule that simply states that, under appropriate circumstances, a landowner's duty of care might not include warning or otherwise protecting visitors from obvious dangers"). Acknowledging that there is a subtle distinction between excusing negligence upon a defense of assumption of risk and narrowly defining the duty of care so that the conduct is not negligent, the court explained the importance of that difference:

"Where there is no duty, there is no fault to compare or distribute under the comparative fault scheme." *Id.* at ¶ 24. Thus, the *Hale* court affirmed the application of the open and obvious doctrine to define the scope of the duty owed by the defendant to the plaintiff, but reversed and remanded the entry of summary judgment because of disputed material facts. *See id.* at ¶¶ 39–40. We believe a narrow scope of duty is also appropriate here, and that the doctrine of assumption of risk is a duty-defining rule under the facts of this case.

### IV. The Element of Causation

¶ 23 The Utah Supreme Court undertook a similar analysis to define the limits of contributory negligence in comparing fault among tortfeasors in *Steiner Corp. v. Johnson & Higgins of California*, 2000 UT 21, 996 P.2d 531 (*Steiner II*). In that case, however, the court focused on the absence of the element of causation. *See id.* at ¶ 7. Steiner Corporation (Steiner) brought a professional malpractice action against Johnson & Higgins of California (J & H), claiming that J & H had negligently structured the Steiner employee retirement plan. *See id.* at ¶ 2. Steiner established a plan that allowed retiring employees to choose between one lump sum payment or the payment of a fixed amount per month. *See Steiner Corp. v. Johnson & Higgins of Cal.*, 135 F.3d 684, 686 (10th Cir.1998) (*Steiner I*) (providing, as noted by the *Steiner II* court, a more complete statement of the facts of the case). The formula developed by Steiner to calculate the lump sum payment resulted in that option being more valuable than the monthly payments. *See id.* As a result, most retirees selected the lump sum option. *See id.*

¶ 24 Subsequently, Steiner retained J & H as the actuary for the plan. *See id.* Although more employees opted for the lump sum payment at retirement, J & H calculated the valuation of the plan each year on the assumption that retirees would choose the monthly payment option. *See id.* In the mid–1980s, Congress passed new legislation that required the plan to be amended by a specific deadline so that it contained "a single formula for calculating optional benefits."

*Id.* (quotations and citation omitted). Although Steiner asked repeatedly for a comparison of the accrued benefits based on the lump sum and monthly payment options, J & H never provided that information. *See id.* at 686–87. Instead, J & H amended the plan documents by incorporating the old formula for lump sum payments. *See id.* at 687. Upon learning of the significant difference between the two calculation methods after the statutory deadline, Steiner further amended the plan to substitute a lump sum formula equivalent to the alternative monthly distribution. *See id.* The delay in making the change, however, resulted in substantial losses to Steiner because the revised formula could only be applied to prospective calculations of benefits. *See id.*

¶ 25 Steiner sued J & H in the United States District Court for the District of Utah for professional malpractice, and J & H asserted a defense that Steiner's own negligence was the cause of its injury. *See id.* at 685. The United States District Court for the District of Utah certified two questions to the Utah Supreme Court:

(1) whether, under Utah law, the negligent acts of a plaintiff in causing or contributing to the situation that the plaintiff hired a professional to resolve can be the basis for a comparative or contributory negligence defense, and (2) whether, under Utah law, a plaintiff's negligent acts in causing or contributing to the situation the plaintiff hired a professional to resolve can be considered in determining causation and damages.

*Steiner II*, 2000 UT 21 at ¶ 1, 996 P.2d 531. The Utah Supreme Court "answer[ed] both questions 'no.'" *Id.* In reaching that conclusion, the *Steiner II* court distinguished between a client's original act of negligence that required it to hire a professional and that client's subsequent negligence that actually interfered with the professional's performance of its duties. *See id.* at ¶ 6 ("[A] plaintiff's negligence in injuring himself could

not be contributory negligence because it was not simultaneous[ ] with or co-operating with the fault for which the plaintiff sought recovery." (final alteration in original) (quotations and citation omitted)). Although the issue was considered in the context of contributory negligence, it provides some guidance to the question before us.

¶ 26 The *Steiner II* court concluded that the element of causation could not be established where the negligence of the plaintiff occurred before the professional was engaged:

[W]e conclude that a preexisting condition that a professional is called upon to resolve cannot be the cause, either proximate or direct, of the professional's failure to exercise an appropriate standard of care in fulfilling his duties. To decide otherwise would allow professionals to avoid responsibility for the very duties they undertake to perform. A doctor, for example, might be able to avoid liability for negligently treating an injured person because the patient negligently had run a traffic light and was injured. Such a result would be clearly unsound.

*Id.* at ¶ 7.[3]

¶ 27 Because the acts of Steiner preceded the engagement of J & H, the *Steiner II* court held that it did not relate to the injury. *See id.* at ¶ 11. Without such a causal connection, the plaintiff's prior negligence could not be considered under Utah's comparative fault analysis. *See id.* at ¶¶ 12–14. The causation element here is also affected by the sequence of events. While it is true that "but for" Oldroyd's accident Fordham would not have been present at the scene, the direct cause of his injuries was the separate and subsequent act of a third party.

¶ 28 Fordham has already recovered from the driver who actually struck him. Thus, we are faced solely with the question of whether members of the public have a duty not to require, as the result of negligence,

---

3. We are cognizant of the difference between the blameless officer here and the defendant in *Steiner II* that was defending against a claim of professional malpractice. The rationale for preventing a professional from asserting a contributory negligence claim on the basis of the negligence that created the circumstances which necessitated the professional's engagement is admittedly more compelling. The focus on the timing of acts of negligence for purposes of evaluating the causation element of negligence, however, is instructive.

highway assistance from police officers. In *Berko v. Freda*, 93 N.J. 81, 459 A.2d 663 (1983), the New Jersey Supreme Court explained that police officers and firefighters have a unique role:

> Governmental entities maintain police and fire departments in anticipation of those inevitable physical perils that burden the human condition, whereas most public employment posts are created not to confront dangers that will arise but to perform some other public function that may incidentally involve risk. . . .
>
> . . . .
>
> This fundamental concept rests on the assumption that governmental entities employ firefighters and police officers, at least in part, to deal with the hazards that may result from their taxpayers' own future acts of negligence. Exposing the negligent taxpayer to liability for having summoned the police would impose upon him multiple burdens for that protection.

*Id.* at 666 (citations omitted); *see also Moody v. Delta W., Inc.*, 38 P.3d 1139, 1141 (Alaska 2002); *Pottebaum v. Hinds*, 347 N.W.2d 642, 645 (Iowa 1984); *Gould v. George Brox, Inc.*, 137 N.H. 85, 623 A.2d 1325, 1328–29 (1993).

¶ 29 We agree that police officers are employed for the very purpose of responding to emergency situations and that it would be contrary to concepts of public policy to impose a duty on citizens not to need such services. In addition, "because negligence is at the root of many calls for public safety officers, allowing recovery would compound the growth of litigation," *Moody*, 38 P.3d at 1142, which we believe is also against public policy. We do not believe it would be desirable for a police officer struck by a drunk driver while issuing a speeding ticket to be able to pursue an action against the speeder simply because he is not made whole by the recovery from the intoxicated driver.

¶ 30 Although Oldroyd's accident brought Fordham to the scene, it was the impact from the third-party vehicle that was the direct cause of Fordham's injuries. *See Gould*, 623 A.2d at 1328 ("The plaintiff responded to the scene to control traffic and was not injured while responding in his professional capacity to the very type of situa-

tion for which he was paid and trained to cope, but rather by the subsequent and independent negligence of [a third party]." (quotations and citation omitted)); *Berko*, 459 A.2d at 665 ("Case law draws a distinction between injuries stemming from the negligence that brought the firefighters or police to the scene in the first place and injuries suffered from independent causes that may follow."). "Thus[,] a police officer who while placing a ticket on an illegally parked car is struck by a speeding vehicle may maintain action against the speeder but the rule bars recovery against the owner of the parked car for negligent parking." *Walters v. Sloan*, 20 Cal.3d 199, 142 Cal.Rptr. 152, 571 P.2d 609, 611 n. 2 (1977).

¶ 31 In reaching the conclusion that the professional-rescuer doctrine bars Fordham's claim against Oldroyd, we emphasize the doctrine's narrowness; it "bars only recovery for the negligence that creates the need for the public safety officer's service." *Moody*, 38 P.3d at 1141. Therefore, the professional-rescuer doctrine "does not apply to negligent conduct occurring after the police officer or firefighter arrives at the scene or to misconduct other than that which necessitates the officer's presence." *Id.; see also* 8 Am.Jur.2d *Automobiles & Highway Traffic* § 691 (1997) ("[T]he fireman's rule is not a bar to a police officer's claim for injuries sustained in the course of his response to an accident scene where such injuries are the result of independent acts of negligence which have no connection with the cause of the officer's presence at the scene."); 6 *Personal Injury, Buildings, Business Establishments & Private Property* § 1.10[1][a] (Jerome Nates et al. eds., 2004) ("Most courts consider that the fireman's rule is of limited scope. That is, while they view the rule as barring recovery for the negligent act which caused public officers to be present in their official capacity, they permit recovery for any unrelated acts of negligence." (footnote omitted)).

¶ 32 As in the cases cited above, Fordham seeks to recover from Oldroyd simply because Oldroyd's prior act of alleged negligence brought Fordham to the location where he was struck by a third party. We

hold that public policy supports a bright-line rule barring such actions, and therefore, we adopt the professional-rescuer doctrine under the facts of this case.

## CONCLUSION

¶ 33 In circumstances like those present here, where a police officer called to the scene of an accident is injured by a third party, the professional-rescuer doctrine bars a claim by that officer against the person whose negligence resulted in the officer's presence at the scene. We affirm the trial court's grant of Oldroyd's motion for summary judgement.

¶ 34 WE CONCUR: JUDITH M. BILLINGS and JAMES Z. DAVIS, Judges.